## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION
### Case No. 22-10293

| | |
|---|---|
| in re:<br><br>**MYA DEIONSHAI CORBETT,**<br><br>Debtor. | **CHAPTER 13**<br><br>**MOTION FOR SANCTIONS** |

**COMES NOW**, the Debtor Mya Deionshai Corbett, and pursuant to 11 U.S.C. § 362(a)(1), (3) (4) and (6), respectfully moves this Court for sanctions against Oak Tree Finance, LLC (Oak Tree), a creditor and its agent Charles Bullock (Bullock) doing business as Towrriffic Towing and Recovery (Towriffic). In support of this motion, the Debtor shows this Court the following:

### FACTUAL ALLEGATIONS

1. Upon information and belief, Bullock owns Towriffic Towing and Recovery, an unlicensed and unregistered business that acts as a recovery agent in North Carolina, operating out of Wendell or Knightdale, North Carolina.

2. There is a Towriffic Towing, LLC, registered with the Secretary of State which was administratively dissolved in 2015.

3. Because of the unknown status between the business and Bullock, who may be operating as a sole proprietorship with an unregistered d/b/a, this Motion will refer to Bullock and Towriffic as substantially the same entity, and the parties together as Creditor Parties, since Bullock/Towriffic acted as agent of Oak Tree.

4. On July 27, 2021, the Plaintiff, Mya Deionshai Corbett, purchased a 2011 Dodge Charger which she financed through Oak Tree Finance, LLC.

5. The amount financed was $16,212.

6. Mya was unaware, but the vehicle had many problems and has cost her over $8,000 in repairs; $3,000 in the first month she owned the vehicle.

7. Because of the costs for repairs Mya has had difficulty making the payments.

8. Mya contacted Oak Tree to ask for a deferred payment in July 2021 and was denied.

9. Prior to the filing of the Chapter 13 petition, the vehicle had been delivered to Black's Tire and Auto Service (BTS) in Apex, North Carolina for repair and had been located there for several days.

10. On the evening of June 7, 2021, Mya called BTS to discuss payment for all debt owed to BTS so that she could retrieve her vehicle.

11. The agent at BTS told Mya that Bullock had called and said words to the effect that BTS could not return the vehicle to Mya, that Towriffic was coming to retrieve the vehicle and that Towriffic would bring the police, an Oak Tree manager and the Department of Motor Vehicles to force the turnover of the vehicle.

12. Mya was attempting to pay what she owed to BTS to retrieve the vehicle, but BTS said it would not accept her payment because of the threats from Bullock and Towriffic and that BTS would turn over the vehicle to Towriffic.

13. At that time Towriffic was not in possession of the vehicle and had no lien rights to the vehicle.

14. On June 8, 2021, Mya arrived at BTS prior to its opening for business for the day.

15. BTS would not allow Mya to pay her debts and retrieve the vehicle but allowed her to get her license plate and some personal items.

16. Towriffic used fraud and deceit to improperly impound Mya's vehicle.

17. If Towriffic had not lied to BTS, Mya would have paid her debt to BTS and would have had the vehicle in her possession when she filed her bankruptcy petition.

18. At 7:53 am on June 8, 2021, Towriffic paid the debt on the vehicle that was owed to BTS.

19. Sometime later that day BTS allowed Towriffic to take Mya's vehicle.

20. On June 8, 2022, Mya filed with this Court a *pro se* Chapter 13 bankruptcy petition.

21. On Schedule D of that Petition, Mya listed Oak Tree as the creditor on her vehicle loan. (Case No. 22-10293, Doc.1, p. 12).

22. Mya included a Form 108 in the Chapter 13 and stated that she intended to keep the vehicle.

23. On June 8, 2021, upon information and belief, Towriffic filed a fraudulent North Carolina Department of Motor Vehicles form LT-260, Report of Unclaimed Vehicle Form after Mya filed her petition.

24. The LT-260 Form was created pursuant to N.C. Gen. Stat. § 20-77(d) which states in relevant part:

> An operator of a place of business for garaging, repairing, parking or storing vehicles for the public in which a vehicle remains unclaimed for 10 days * * *shall, within five days after the expiration of that period, report the vehicle as unclaimed to the Division.

25. When Towriffic filed the LT-260 form the vehicle was not abandoned and had not been in the possession or at the place of business of Towriffic for 10 days.

26. The vehicle had been at the Towriffic place of business for a few hours and only because Towriffic had towed it there after violating the law to obtain the vehicle.

27. The LT-260 requires the person submitting the form to certify that the vehicle "has been unclaimed for 10 days."

28. When Towriffic filed this report, it did so illegally and knowingly.

29. Towriffic filed this illegal report for the benefit of itself and Oak Tree.

30. At that time Towriffic was engaged in fraud and illegal activities to obtain possession of the vehicle.

31. This act also violated § 362(a)(3) as it was a further act to secure the property of the estate.

32. The Creditor Parties have never rescinded the LT-260 and so have engaged in an ongoing, knowing and intentional violation of the stay.

33. Oak Tree took, and has continually taken, knowing advantage of the illegal acts performed by Towriffic to better its position with regard to the vehicle.

34. On June 8, 2022, Mya contacted Oak Tree to discuss the return of the vehicle, which was at that time property of the estate, and specifically discussed rims and tires that are on the vehicle which are leased.

35. Because the Creditor Parties are still improperly keeping Mya's vehicle in open and continued violation of the bankruptcy stay, Mya is unable to work, which has caused many compounded damages.

36. Mya wanted to at least retrieve the wheels and tires to return them to the leasing company so that her lease debt would not increase.

37. She could no longer pay the lease payments because she could not work because Oak Tree and Towriffic continued to keep the vehicle in violation of the automatic stay.

38. The automatic stay is intended to provide a "fresh start" to debtors. This includes the debtor being able to work.

39. Oak Tree directed Mya to speak with its attorney, Steven Walker.

40. Mya contacted Steven Walker about the return of the property of the estate.

41. Mr. Walker stated that Mya could obtain the vehicle if she provided proof of insurance, tags and a driver's license.

42. Oak Tree was aware that the vehicle was insured because it had required insurance upon purchase, and it was paid monthly.

43. Mya called Bullock and Towriffic who stated that Towriffic would not release the car until the Bankruptcy court called Towriffic, and that Oak Tree would have to provide a release.

44. None of Towriffic's requirements comport with bankruptcy law.

45. Towriffic retained the property of the estate and acted to create, perfect or enforce a lien against property of the estate or to create, perfect or enforce a lien to the extent that it secured a claim that arose before the commencement of the case, in violation of the automatic stay which was in place at the time.

46. All of the actions described herein were done intentionally for the benefit of Towriffic and Oak Tree.

47. Because Towriffic, Oak Tree, and Bullock would not release the vehicle despite the automatic stay, the reason for Mya filing the bankruptcy case was defeated.

48. Given that the bankruptcy did not give Mya the fresh start promised by bankruptcy law, Mya let the bankruptcy close through operation of law.

49. During the hearing in this matter before the Bankruptcy Court on September 27, 2022, Bullock, the owner of Towriffic (which appears to be merely a d/b/a), appeared and represented the d/b/a.

50. Bullock was instructed by the Court that he should retain counsel as he was not licensed to appear before the Court to represent another party.

51. Bullock ignored the Court's instructions and continued to argue why the case against him should be dismissed.

52. His arguments were appropriately ignored by the court.

53. The purpose of bankruptcy law was defeated by the intentional actions of Towriffic, Oak Tree, and Bullock.

54. Every act performed by Towriffic inured to the benefit of Oak Tree and Towriffic acted as the agent of Oak Tree.

55. Every act performed by Bullock inured to the benefit of Towriffic and Oak Tree, and Bullock acted as the agent of Towriffic and Oak Tree.

56. Towriffic, Oak Tree, and Bullock are jointly and severally liable for all damages suffered by Mya.

57. Because Mya's vehicle was improperly repossessed and not returned after the bankruptcy filing, Mya suffered unreasonable loss including but not limited to:

    1. Loss of the income because she could not drive to work

    2. Unrecouped expenses

    3. Loss of time

    4. Emotional distress

    5. Attorney fees and costs

58. The Creditor Parties' conduct was a direct and proximate cause, as well as a substantial factor, in bringing about the damages to Mya that are outlined herein.

59. The Creditor Parties' acts as described herein were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Mya's rights under the law, with deliberate indifference to the results of their actions, and with the purpose of coercing Mya to pay money relating to the debt.

## STATEMENT OF LAW: VIOLATIONS OF 11 U.S.C. § 362

60. The foregoing paragraphs are incorporated as though the same were set forth at length herein

61. The Creditor Parties are currently engaged in an ongoing and flagrant violation of the automatic stay which started June 8, 2021, by not returning the vehicle, but instead continuing to cause the Plaintiff to undergo serious loss of property and income as well as other expenses.

62. 11 U.S. Code § 362(a)(3) prohibits "any act to ... exercise control over property of the estate." This Court is familiar with *City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 592 (2021) and the Supreme Court's limited opinion regarding § 362(3).

63. However, the post-petition filing of the LT-260 Form was another step, taken post-petition, to secure permanent possession of, and interest in, the property of the estate and the Debtor.

64. It should also be noted that it has not been determined that the car was actually repossessed pre-petition. Discovery may show that it was repossessed post-petition and § 362(a)(3) applies.

65. However, in a concurrence with the majority opinion, Justice Sotomayor added:

> I write separately to emphasize that the Court has not decided whether and when § 362(a)'s other provisions may require a creditor to return a debtor's property. Those provisions stay, among other things, "any act to create, perfect, or enforce any lien against property of the estate" and "any act to collect, assess, or recover a claim against [a] debtor" that arose prior to bankruptcy proceedings. §§ 362(a)(4), (6); *see, e.g., In re Kuehn*, 563 F.3d 289, 294 (CA7 2009) (holding that a university's refusal to provide a transcript to a student-debtor "was an act to collect a debt" that violated the automatic stay). Nor has the Court addressed how bankruptcy courts should go about enforcing creditors' separate obligation to "deliver" estate property to the trustee or debtor under § 542(a). <u>The City's conduct may very well violate one or both of these other provisions</u>. The Court does not decide one way or the other.

*City of Chicago, Illinois v. Fulton*, 141 S. Ct. 585, 592 (2021) (emphasis supplied).

66. The Supreme Court has now affirmed that failing to return the estate property that was taken post-petition may violate other subsections of § 362.

67. Because of this determination, the Court cannot say that such actions can not violate the stay.

68. § 362(a)(1) prohibits the... continuation, including the ... employment of process, or other action ... against the debtor that was ... commenced before the commencement of the case under

this title, or to recover a claim against the debtor that arose before the commencement of the case under this title.

69. The Creditor Parties continued the repossession of the car, which is the continued employment of the process of self-help repossession, and perfection and priority of a security interest in the car and the property of the estate pursuant to N.C. Gen. Stat. § 25-9-503.

70. "In enacting N.C. Gen. Stat. § 25–9–503, our General Assembly codified a right existing at common law." *Giles v. First Virginia Credit Servs., Inc*., 149 N.C. App. 89, 105 (2002). "[O]ur statutory scheme [] provides for repossession without judicial process. *Id*., at 104.

71. The continued repossession of the car was an attempt to perfect and enforce the lien in violation of § 362.

72. § 362(a)(4) prohibits "any act to create, perfect, or enforce any lien against property of the estate." *Id*. The Creditor Parties violated § 362(a)(4).

73. § 362(a)(6) prohibits "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." *Id*. The Creditor Parties violated § 362(a)(6).

74. The intimidation of BTS to secure property of the estate and the fraudulent and illegal actions regarding the North Carolina form LT-260 demonstrate the intentional and egregious activities of the Creditor Parties that warrant punitive damages.

75. The refusal to return property of the estate or seek relief from the stay warrants punitive damages:

> The integrity of the automatic stay would be compromised if creditors were free to ignore the complaints of debtors and unilaterally decide not to seek relief after technical violations .... Creditors must not be allowed to ignore a stay with impunity.

*In re Houck*, 597 B.R. 820, 833 (Bankr. W.D.N.C. 2019), *citing In re Grason*, 2013 WL 3781766, at *7 (Bankr. C.D. Ill. July 18, 2013).

76. The Creditor Parties at bar took a "wait and see" approach by retaining estate property (the Debtor's car) in hopes that the bankruptcy would fail.

77. This approach has been roundly condemned many times:

> The essence of [the Defendant's] "wait-and-see" approach is flawed and in direct conflict with a litany of case law. If [the Defendant] learns of a technical violation, it is obligated to determine the effect of the stay and remedy its violation—not wait to see if the case will be dismissed and the "barrier" of the automatic stay removed.

*In re Houck*, 597 B.R. 820, 834.

78. The Creditor Parties did the opposite; Towriffic fraudulently filed an LT-260 form that was intended to transfer title of the car to Towriffic.

79. The *Houck* Court held that punitive damages and a strong caution were warranted to serve as a deterrent for future violators:

> [The Defendant's] technical violation of the automatic stay turned into a willful violation, which resulted in injury to the Plaintiff, when [the Defendant] took no action to restore the status quo after learning about the Plaintiff's active bankruptcy case on the afternoon of December 20, 2011. [The Defendant's] blatant disregard for the automatic stay is unacceptable and should not be emulated by other members of the creditors' bar.

*In re Houck*, 597 B.R. 820, 836.

80. This Court should likewise sanction the Creditor Parties, and for the same reasons.

81. Because of the Creditor Parties' actions, Mya is entitled to damages to be determined by the Court including costs, punitive damages and attorney fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages against the Creditor Parties, based on the following requested relief:

a) A finding that the Oak Tree, Towriffic and Bullock have violated 11 U.S.C. § 362(a)(1), (3) (4) and (6);

b) Actual and Punitive damages, including attorney fees and costs, pursuant to 11 U.S.C §362(k); and,

c) Such other and further relief as may be necessary, just, and proper.

**TODAY** is November 10, 2022.

                              **COLLUM & PERRY**

By: **/s/ M. Shane Perry**
M. Shane Perry
NC Bar No. 35498
109 W. Statesville Ave.
Mooresville, NC 28115
Telephone: 704-663-4187
shane@collumperry.com
*Attorney for Plaintiff*

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION
Case No. 22-10293

| | |
|---|---|
| **in re:** <br><br> **MYA DEIONSHAI CORBETT,** <br><br> Debtor. | **CHAPTER 13** <br><br> **MOTION FOR SANCTIONS** |

### CERTIFICATE OF SERVICE

I, M. Shane Perry, do hereby certify that the foregoing **Motion for Sanctions** in this case, was served electronically through the CM/ECF system to all parties of record and by electronic mail and US Mail to the following:

**OAK CITY LAW, LLP**
Robert E. Fields III
1530 N. Gregson Street, Suite 3E
Durham, North Carolina 27701
rob.fields@OakCityLaw.com
*Attorney for Defendant Towriffic Towing & Recovery*

**WALKER KIGER, PLLC**
David "Steven" Walker
100 Professional Court, Ste 102
Garner, NC 27529
steven@walkerkiger.com
*Attorney for Defendant Oaktree Finance LLC*

**TODAY** is November 10, 2022.

**COLLUM & PERRY**

By:   */s/ M. Shane Perry*
M. Shane Perry
NC Bar No. 35498
109 W. Statesville Ave.,
Mooresville, NC 28115
Telephone: 704-663-4187
Facsimile:  704-663-4178
shane@collumperry.com
*Attorney for Plaintiff*